**HOUSEHOLD GOODS CARRIERS' BUREAU**, Allied Van Lines, Inc., North American Van Lines, Inc., United Van Lines, Inc., Bert Hussey, dba Hussey's, A. L. Chipman, dba Goodwin Moving and Storage, United California Express and Storage Co., dba U. C. Express and Storage Co., and Von Der Ahe Van Services, Inc., dba Bentley's, Inc., Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants.

Civ. No. 47646.

United States District Court
N. D. California.

June 10, 1968.

See 89 S.Ct. 477.

Rice, Carpenter & Carraway, Washington, D. C., Silver, Rosen & Kerr, San Francisco, Cal., for plaintiffs.

Warren H. Saltzman, San Francisco, Cal., and Herbert Burstein, New York City, for Movers' and Warehousemen's Assn. of America, plaintiff in intervention.

Berol, Loughran & Geernaert, Handler, Baker & Greene, San Francisco, Cal., for National Furniture Warehousemen's Assn., defendant in intervention.

Cecil F. Poole, U. S. Atty., Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., for Am. Trucking Assn. Inc.

Robert C. Stetson, Menlo Park, Cal., for Consolidated Freightways Corp.

Chickering & Gregory, San Francisco, Cal., for Garrett Freightways Inc., Navajo Freight.

## OPINION

Before BROWNING, Circuit Judge, and SWEIGERT and BURKE, District Judges.

PER CURIAM.

This is an action before a statutory three-judge court [28 U.S.C. §§ 1336, 2284, 2321–2325] to annul and set aside a Report and Order of the Interstate Commerce Commission. The Report, Kingpak, Inc., Investigation of Operations, 103 M.C.C. 318 (1967), was principally concerned with the legality of door-to-door container services provided by non-regulated freight forwarders of used household goods. In substance, the Commission held that the parties under investigation were performing their services in accord with all the criteria of a freight forwarder as that term is defined in section 402(a) (5) of the Interstate Commerce Act, 49 U.S.C. § 1002(a) (5). The Commission properly deferred to another proceeding consideration of whether these freight forwarders were relieved of the duty of compliance with part IV of the Act [49 U.S.C. §§ 1001–1022] by reason of the exemption in section 402(b) (2) [49 U.S.C. § 1002(b) (2)] for freight forwarders who limited their operations to the handling of used household goods.

A freight forwarder is one who in the ordinary course of business assembles and consolidates small shipments into a single lot, assumes responsibility for the transportation of such property from a point of receipt to a point of destination, utilizes the services of carriers by rail, water or motor vehicle to help accomplish the movement, breaks the consolidated shipment up into its component parts, and distributes the goods to their destination point.

Since the original shipments are usually small, the customer is charged on the basis of freight rates applicable to less-than-truckload or less-than-carload shipments. The freight forwarder, who consolidates multiple small shipments into one large one, secures the cheaper transportation rate applicable to full truckload or carload lots. The spread between the two freight rates accounts for his gross profit.

The plaintiffs are all motor carriers of household goods certificated under part II of the Act. The forwarders involved in this proceeding compete with the plaintiffs by offering a service in

which household goods are transported from door to door in one container. ·The goods are stowed into the container at the point of origin, are moved from household to terminal by local ware- housemen or motor vehicle operators, are transported overland by rail or truck common carriers and overseas by ocean vessels, are further moved from terminal to household by local warehousemen and motor vehicle operators, and are finally removed from the container at the point of destination. This door-to-door con- tainer service eliminates the necessity of rehandling the lading in transit, thus re- sulting in a more economical rate.

The great preponderance of traffic handled by these freight forwarders consists of the household effects of mili- tary personnel moving to and from over- seas duty stations. Because of the geo- graphical dispersion of such shipments, the practice of the Department of De- fense in tendering shipments to ap- proved forwarders on a rotation basis, and the need for expedited deliveries, the forwarder rarely has sufficient traf- fic at any one time to permit it to effect consolidation of shipments originating in its own service. Instead a practice has developed whereby two or more freight forwarders secure the economies available in full carload or truckload freight rates by combining their single shipments onto the same truck or car. This combining of shipments is referred to as joint-loading.

■ Section 402(a) (5) requires that a freight forwarder assemble and consol- idate or provide for the assembly and consolidation of property entrusted to him for transit. The Commission con- cluded that joint-loading, being the sub- stantial equivalent of consolidation, sat- isfies the statutory requirement. Such an interpretation by the Interstate Com- merce Commission of the very statute which it enforces is entitled to great weight and should not be lightly inter- fered with by this court in the absence of compelling reasons. See United States v. American Trucking Associa- tions, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); I.C.C. v. Allen E. Kroblin, Inc., 113 F.Supp. 599, 623 (N. D.Iowa, 1953), aff'd, 212 F.2d 555 (8th Cir. 1954), cert. denied, 348 U.S. 836, 75 S.Ct. 49, 99 L.Ed. 659 (1954). No such reasons have here been shown.

The Commission has recognized that consolidation can be performed in many ways. See, e. g., Hopke Freight For- warder Application, 265 I.C.C. 726 (1950); Barge Service Corp. Freight Forwarder Application, 285 I.C.C. 249 (1953). It has also accepted the right of two freight forwarders to joint-load their less-than-carload lots onto the same car. Twin City Shippers Association Freight Forwarder Application, 260 I.C.C. 307 (1944); Kelly Freight Forwarder Ap- plication, 260 I.C.C. 315 (1944); Em- pire Freight Co. Freight Forwarder Ap- plication 265 I.C.C. 109 (1947).

■ Plaintiffs argue, however, that the combining of traffic in the joint- loading process must always be a com- bining of consolidated shipments rather than of single shipments; each freight forwarder must effect a consolidation of his own shipments before joint-loading. We disagree. There is nothing in the language of the statute to compel such a result. Furthermore, we see no great distinction between the joint-loading of consolidated and unconsolidated ship- ments; the service to the consumer is the same in either case. Accordingly, we hold that when the single shipment of one freight forwarder is joint-loaded with the single shipments of one or more other freight forwarders for the purpose of tendering the combined ship- ment for line-haul transportation, the statutory requirement of consolidation has been met.

Plaintiffs next attack the Commis- sion's finding that such consolidations can be effected through the physical ag- gregation of shipments at the port of embarkation or even outside the United States. They claim that the mere assem-

**644**

bly movement into a port is not enough; at least part of the line-haul movement of the consolidated lot must take place within the United States. However, we find no support for the plaintiffs' position in either the statute or case law.

■ The Commission has consistently held that the definition of a freight forwarder does not require that all the essential operations be performed within the United States; it is enough that each is in fact performed. To be sure, the Commission's jurisdiction (and hence its power to regulate) extends only to the boundaries of the United States, but because the extent of the operations in the United States is limited does not prevent the entire operation from being properly classified as freight forwarding. In fact, the Commission has granted permits for the conduct of forwarding operations between the United States and foreign countries [such permits being limited to the extent of the operations within the United States] where each one of the four necessary criteria of freight forwarding as defined in section 402(a) (2) has occurred outside the United States. See, e.g., Chi-Can Freight Forwarding Limited, Freight Forwarder Application, 310 I.C.C. 693 (1960) (assembly and consolidation in the United States, break-bulk and distribution in Canada); Adanac Freight Forwarders Limited Freight Forwarder Application, 265 I.C.C. 493 (1948) (assembly and consolidation in United States, break-bulk and distribution in Canada); B.C. Forwarding Co., Freight Forwarder Application, 265 I.C.C. 308 (1948) (assembly and consolidation in United States, break-bulk and distribution in Canada); Alltransport Incorporated Freight Forwarder Application, 325 I.C.C. 183 (1965) (assembly and consolidation in Canada, break-bulk and distribution in United States); National Carloading Corp. Alaska and Hawaii "Grandfather" Application, 323 I.C.C. 195 (1964) (assembly, consolidation and break-bulk in United States, distribution by ocean transport).

■ We hold that the Commission did not err in ruling that the requirements of the statutory definition in section 402(a) (5) are satisfied whenever 1) an actual freight forwarder service is being performed and 2) any portion of the through movement, even if it be before consolidation, takes place within the United States.

The Order here on review involved three consolidated proceedings heard on a single record: a complaint, a petition for a declaratory order, and an investigation. Each of these was primarily directed to the same issue—the legality of the door-to-door container services provided by the purportedly exempt freight forwarders of used household goods. The Commission's order provided for the dismissal of the complaint, denial of the petition for declaratory order, and discontinuation of the Commission's self-initiated investigation.

After finding that the described operations met the statutory definition, the Commission was faced with the question of whether the independent forwarders are themselves the persons who perform or provide for the performance of all the functions attributed to them. Although recognizing that it is not improper for a freight forwarder to utilize the services of an agent [see, e.g., Kelly Freight Forwarder Application, 260 I.C.C. 315 (1944)], the Commission found that "in some few instances these forwarders are no more than names and that all, or nearly all, forwarding functions are being performed by traffic management companies * * *", [103 M.C.C. at 331] who frequently take complete control of both the consolidation and the routing of the shipments entrusted to them.

Despite the determination that in "extreme cases" at least some of the forwarders were not performing the functions attributed to them, the Commission declined to issue any cease and desist orders. Rather it concluded that

"in view of the uncertainty which has attached to the status of forwarders using such agents, it would be appropriate for us to set forth guidelines to assist the forwarders in their future efforts to guard against practices which would cast doubt upon their entitlement to exemption." 103 M.C.C. at 332.

Plaintiffs assert that the Commission's articulation of this set of standards did not satisfy the Commission's obligation to dispose of the issues before it. They claim that the Commission had a duty to determine with specificity and particularity the details of the operations of each respondent before it and to enter cease and desist orders against those found to be operating unlawfully.

■ The choice of an appropriate remedy in an I.C.C. proceeding is properly entrusted to the expertise and discretion of the Commission. We hold that the articulation by the Commission of this set of guidelines was an adequate disposition of not only the Commission's investigation but of the other two consolidated proceedings as well.

The petition for declaratory order sought to clarify the legal status of the door-to-door container service. Although in form the Commission denied the petition for declaratory order, in substance the relief has been granted by promulgating a set of standards to govern future conduct. Any earlier uncertainty which might have existed was removed by these guidelines.

Similarly, the complaint was properly dismissed, even though it was never determined which, if any, of the respondents were operating unlawfully. Plaintiffs here have pointed to no evidence before the Commission which would support a finding of unlawful operations. At any rate, since cease and desist orders operate prospectively compliance with the new guidelines would render any such orders moot. We find no error in the Commission's decision to defer consideration of the operations of specific freight forwarders until each has had an opportunity to comply with the new guidelines.

In the course of its investigation the Commission became concerned about the activities of the small warehousemen and local cartage companies which handled the terminal services for the exempt or unregulated freight forwarders. This service consists, on outbound shipments, of removing furniture from the homes at the point of origin, taking it to the warehouse for containerizing, and tendering the shipment to a certified motor or rail carrier for transportation to a port for overseas shipment. The inbound service involves the acceptance of packaged shipments of household goods from railroads and certified truck lines, unpackaging them, and placing the goods in the destination residence.

For many years the motor operations of these local operators were conducted without authority in reliance upon an informal opinion of one of the Commission's Bureaus that such transportation was exempt from regulation. In *Kingpak*, the Commission found that authority is in fact required. As a result, each such local carrier who wishes to continue providing such services will have to file an application for operating authority under section 207 of the Act, 49 U.S. C. § 307. The Commission anticipates that over four hundred such applications will be filed.

With an eye to its ever increasing caseload and to the fantastic burden that the processing of these applications would cause, the Commission announced that in the case of future applications arising as a result of the *Kingpak* decision, a modified procedure will be employed. Each application, insofar as possible will be handled without oral adversary hearings. If the territorial scope of the application is limited to that area in which the applicant has already been performing terminal services for an extended period of time, the

applicant can avoid the necessity of further proof by appending to its application verified statements showing its entitlement to the authority sought. Any other interested party may file a protest but "oral hearings will not be held unless in the judgment of the Commission such procedure will assist materially in reaching a prompt and fair decision upon the application." 103 M.C. C. 345.

Plaintiffs contend that such a procedure denies them due process of law. They assert that an existing carrier who opposes the issuance of authority to a prospective competitor has an absolute right to an oral hearing with full opportunity to cross-examine opposing witnesses.

■ Whatever the merits of plaintiffs' contention, plaintiffs are not in a position at this time to raise it. The Commission did no more than make an announcement of its intention. To date, although over two hundred temporary operating authorities have been issued under 49 U.S.C. § 310a, not one final application has been acted upon. The modified procedure provides that all interested parties be notified, allowed to protest and submit representations, and be permitted to participate in an oral hearing should one be held. If and when the modified procedure is actually used, plaintiffs may file protests and assert their right to a full oral hearing. Under the policy announced by the Commission, oral hearings are not entirely precluded; such hearings may still be held in the judgment of the Commission. Should the Commission deny plaintiffs' request, plaintiffs will be required to exhaust all the administrative remedies available to them before they can challenge such a ruling in this court. We hold that the challenged procedure may be reviewed only after a final order granting such an application without a full oral hearing and by appeal from such a final order.

The complaint is dismissed.