**MERCURY MOTOR EXPRESS, INC., et al., Plaintiffs-Appellants,**

v.

**Norman C. BRINKE, Defendant-Appellee.**

**No. 72-1110.**

United States Court of Appeals, Fifth Circuit.

March 15, 1973.

George D. Gold, Bernard C. Pestcoe, Miami, Fla., for plaintiffs-appellants.

James J. Kenny, William G. Earle, Miami, Fla., J. Raymond Clark, Washington, D. C., for defendant-appellee.

Before RIVES, THORNBERRY and GOLDBERG, Circuit Judges.

THORNBERRY, Circuit Judge:

Plaintiffs below sought a temporary restraining order, a preliminary injunction, and a permanent injunction to prevent defendant Brinke from unlawfully operating as a freight forwarder without an Interstate Commerce Commission (ICC) permit. The district court denied preliminary injunctive relief and in the same order stayed further proceedings pending final action by the ICC on Brinke's freight forwarder permit application. Invoking this court's jurisdiction under 28 U.S.C.A. § 1292(a)(1), plaintiffs appeal from both parts of the interlocutory order. Initially, this appeal presents a question of appellate jurisdiction to review the district court's stay order. Concluding that we have jurisdictional power to review the stay order as well as the denial of injunctive relief, we vacate the stay and affirm the denial of a preliminary injunction.

The eight plaintiffs in this case are freight forwarders who operate as such under statutorily[1] required ICC permits. A freight forwarder may be described as follows:

> A freight forwarder is one who in the ordinary course of business assembles and consolidates small shipments into a single lot, assumes responsibility for the transportation of such property from a point of receipt to a point of destination, utilizes the services of carriers by rail, water or motor vehicle to help accomplish the movement,

---

1. Interstate Commerce Act, § 410(a)(1), 49 U.S.C.A. § 1010(a)(1).

breaks the consolidated shipment up into its component parts, and distributes the goods to their destination point.

Since the original shipments are usually small, the customer is charged on a basis of freight rates applicable to less-than-truckload or less-than carload shipments. The freight forwarder, who consolidates multiple small shipments into one large one, secures the cheaper transportation rate applicable to full truckload or carload lots. The difference between the two freight rates accounts for his gross profit.

Household Goods Carriers' Bureau v. United States, N.D.Cal.1968, 288 F. Supp. 641, 642, aff'd per curiam, 393 U. S. 265, 89 S.Ct. 477, 21 L.Ed.2d 426; *see also* Acme Fast Freight, Inc. v. United States, S.D.N.Y.1940, 30 F.Supp. 968, 969–971, aff'd per curiam, 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993. Freight forwarders are to be distinguished on the one hand from rail or pipe line carriers, water carriers, and motor carriers, which are expressly excluded from the statutory freight forwarder definition,[2] and on the other hand from brokers,[3] who generally perform the more limited

role of arranging for transportation by motor carrier without consolidating or distributing shipments or assuming responsibility for the property en route. An appropriate ICC certificate or license is required for lawful operation as a carrier [4] or a broker,[5] just as a permit is required for doing business as a forwarder.

Defendant Brinke holds an ICC broker's license, which was issued to him in 1964, but he has no freight forwarder permit. He applied to the ICC for a freight forwarder permit in December of 1963, about a month before he applied for the broker's license, but his application, adrift on an administrative odyssey which has already lasted over nine years, has not yet received final action.

Plaintiffs alleged in their complaint below that Brinke, despite his lack of an appropriate permit, is functioning as a freight forwarder in blatant violation of the permit requirement of 49 U.S.C.A. § 1010, and that they are injured by competition from his unlawful enterprise. Suing under § 417(b)(2) of the Interstate Commerce Act, 49 U.S.C.A. § 1017(b)(2), which confers jurisdiction on the district court to enjoin a "clear and patent violation of section 1010" on

2. The statutory definition of freight forwarder is found in § 402(a)(5) of the Interstate Commerce Act, 49 U.S.C.A. § 1002(a)(5):

The term "freight forwarder" means any person which (otherwise than as a carrier subject to chapters 1, 8, or 12 of this title) holds itself out to the general public as a common carrier to transport or provide transportation of property, or any class or classes of property, for compensation, in interstate commerce and which, in the ordinary and usual course of its undertaking, (A) assembles and consolidates or provides for assembling and consolidating shipments of such property, and performs or provides for the performance of break-bulk and distributing operations with respect to such consolidated shipments, and (B) assumes responsibility for the transportation of such property from point of receipt to point of destination, and (C) utilizes, for the whole or any part of the transportation of such shipments, the services

of a carrier or carriers subject to chapters 1, 8, or 12 of this title.

3. The statutory definition of broker is found in § 203(a)(18) of the Interstate Commerce Act, 49 U.S.C.A. § 303(a)(18):

The term "broker" means any person not included in the term "motor carrier" and not a bona fide employee or agent of any such carrier, who or which, as principal or agent, sells or offers for sale any transportation subject to this chapter, or negotiates for, or holds himself or itself out by solicitation, advertisement, or otherwise as one who sells, provides, furnishes, contracts, or arranges for such transportation.

4. For carriers a certificate of public convenience and necessity issued by the ICC is required. See Interstate Commerce Act, § 1(18), 206(a)(1), 309(a), 49 U.S. C.A. §§ 1(18), 306(a)(1), 909(a).

5. A broker must obtain from the ICC a license. See Interstate Commerce Act, § 211(a), 49 U.S.C.A. § 311(a).

application of "any person injured thereby," plaintiffs sought a temporary restraining order and a preliminary injunction as well as a permanent injunction to halt Brinke's allegedly unlawful operation. Brinke appears not to have contested the characterization of his business as a freight forwarding operation. He moved to dismiss, however, on the theory that his broker's license at least colorably authorizes the services he renders so that there was no "clear and patent" violation of § 1010, and he moved alternatively for a stay of proceedings pending final action by the ICC on his freight forwarder permit. The district court after a hearing granted the alternative motion to stay, reserved ruling on the motion to dismiss, and denied plaintiffs' application for a temporary restraining order and a preliminary injunction. Plaintiffs then took this interlocutory appeal from the stay order and denial of injunctive relief.

## I. Jurisdiction

██ It is clear that this court has jurisdiction under 28 U.S.C.A. § 1292(a)(1) to review an order denying a preliminary injunction, but not an order denying a temporary restraining order. See, e. g., Smith v. Grady, 5th Cir. 1969, 411 F.2d 181; Connell v. Dulien Steel Products, 5th Cir. 1957, 240 F.2d 414, see also C. Wright, Federal Courts § 102 (2d ed. 1970). Accordingly, we shall consider the propriety of the district court's denial of the preliminary injunction and pretermit consideration of the denial of the temporary restraining order.

██ The basis of appellate jurisdiction to review the portion of the order staying proceedings is less obvious, but no less certain. Plainly, the stay order is not appealable as a final order under 28 U.S.C.A. § 1291. Further, we can say with certainty that the stay order standing alone—that is, considered independently of the order denying a preliminary injunction—would not be appealable under § 1292(a)(1).[6] The settled rule governing appealability of stay orders is:

An order staying or refusing to stay proceedings in the District Court is appealable under § 1292(a)(1) only if (A) the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law; *and* (B) the stay was sought to permit the prior determination of some equitable defense of counterclaim.[7]

Jackson Brewing Company v. Clarke, 5th Cir. 1962, 303 F.2d 844, 845, cert. denied, 371 U.S. 891, 83 S.Ct. 190, 9 L.Ed. 2d 124, reh. denied, 371 U.S. 936; 83 S. Ct. 305, 9 L.Ed.2d 272; J. S. & H. Construction Company v. Richmond County Hospital Authority, 5th Cir. 1973, 473 F.2d 212 [1973]; *see generally* 9 Moore's Federal Practice ¶ 110.20[3] (2d ed. 1972); C. Wright, Federal Courts § 102 (2d ed. 1970). In this case, the first requirement of the jurisdictional rule is not met since the action for injunctive relief under 49 U.S.C.A. § 1017(b)(2) is clearly equitable in nature. *See* Ephraim Freightways, Inc. v. Red Ball Motor Freight, Inc., 10th Cir. 1967, 376 F.2d 40, cert. denied, 389 U.S.

6. The opposite conclusion would be required if the stay order itself had the effect of denying a preliminary injunction. Glen Oaks Utilities, Inc. v. City of Houston, 5th Cir. 1960, 280 F.2d 330.

7. Judge Jones has observed, "The operation of the stay order is the same in the action equitable as in the action legal and if a right of appeal should be allowed or denied in one, the same should be true in the other," and has suggested that the framers of the Federal Rules of Civil Procedures intended to lay to rest procedural rules such as the above-quoted one governing appealability of a stay which depend on the law-equity distinction. Glen Oaks Utilities, Inc. v. City of Houston, 5th Cir. 1960, 280 F.2d 330. Nevertheless, the rule is well established. Professors Moore and Wright have suggested that Congress or the Supreme Court should establish more rational rules in this area, but as yet neither body has undertaken to do so. *See* 9 Moore's Federal Practice ¶ 110.20 [3] at 245 (2d ed. 1972); C. Wright, Federal Courts § 102 at 460 (2d ed. 1970).

829, 88 S.Ct. 92, 19 L.Ed.2d 87. Thus, the stay is not itself an appealable order.

■■ Because this case is properly before the court as an appeal from the denial of an injunction under 28 U.S.C. A. § 1292(a)(1), however, our permissible scope of review extends to the stay order as well. A court of appeals normally will not consider the merits of a case before it on an interlocutory appeal except to the extent necessary to decide narrowly the matter which supplies appellate jurisdiction, *e. g.*, Time, Inc. v. Ragano, 5th Cir. 1970, 427 F.2d 219, but this rule is one of orderly judicial administration and not a limit on jurisdictional power. "[O]nce a case is lawfully before a court of appeals, it does not lack power to do what plainly ought to be done." 9 Moore's Federal Practice ¶ 110.25[1] (2d ed. 1972); *see also* Kohn v. American Metal Climix, Inc., 3rd Cir. 1971, 458 F.2d 255, cert. denied, 409 U. S. 874, 93 S.Ct. 120, 34 L.Ed.2d 126 (1972); Korn v. Franchard Corporation, 2d Cir. 1971, 443 F.2d 1301, 1306; Semmes Motors, Inc. v. Ford Motor Company, 2d Cir. 1970, 429 F.2d 1197; Carter v. American Telephone & Telegraph Company, 5th Cir. 1966, 365 F.2d 486, cert. denied, 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546; 3 W. Barron & A. Holtzoff, Federal Practice and Procedure § 1440 (Wright ed. Supp.1971). The Supreme Court has affirmed the power of an appellate court to reach the merits of a case before it on an interlocutory appeal and dismiss the action. Deckert v. Independence Shares Corporation, 1940, 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189; Smith v. Vulcan Iron Works, 1897, 165 U.S. 518, 17 S.Ct. 407, 41 L.Ed. 810. The Second Circuit has exercised its broad jurisdictional power on an interlocutory appeal from denial of a preliminary injunction to direct the entry of judgment for the plaintiffs. Hurwitz v. Directors Guild of America, Inc., 2d Cir. 1966, 364 F.2d 67, cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L. Ed.2d 435. This court has previously exercised its jurisdictional power to review an otherwise non-appealable stay order in an interlocutory appeal from the denial of a preliminary injunction under § 1292(a)(1), and we think it is appropriate to exercise this power power for the same purpose in this case. Carter v. American Telephone & Telegraph Company, *supra*; *see also* Semmes Motors, Inc. v. Ford Motor Company, *supra*.

## II. The Stay Order

The district court stayed further proceedings below pending final action by the ICC on Brinke's freight forwarder permit because it concluded that central issues in the case lay "within the particular expertise and primary jurisdiction of the Interstate Commerce Commission." [8] We do not believe, however, that the doctrine of primary jurisdiction may properly be invoked to stay a suit brought under 49 U.S.C.A. § 1017(b)(2).

■ The judge-made doctrine of primary jurisdiction comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the court and of the agency. The doctrine operates, when applicable, to postpone judicial consideration of a case to administrative determination of important questions in-

---

8. The pertinent conclusions of law of the district court are:
    2. The interpretation of the broker's license held by defendant and a determination of the lawfulness of the activities of defendant conducted pursuant thereto are matters within the particular expertise and primary jurisdiction of the Interstate Commerce Commission.

3. In view of the pendency of a proceeding before the Interstate Commerce Commission in which the issue has been raised as to the lawfulness of defendant's present activities, it is not appropriate for this Court to exercise jurisdiction until final disposition of the matter by the Commission.

volved by an agency with special competence in the area. It does not defeat the court's jurisdiction over the case, but coordinates the work of the court and the agency by permitting the agency to rule first and giving the court the benefit of the agency's views, *see* 3 K. Davis Administrative Law Treatise § 19.01 (1958). Mr. Justice Harlan has summarized the development of the primary jurisdiction doctrine and the considerations which underlie it and govern its application:

> The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. "Exhaustion" applies when a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. "Primary jurisdiction," on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433, 60 S.Ct. 325, 331, 84 L.Ed. 361.
>
> No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. See Texas & Pacific Railroad Company v. Abilene Cottonoil Company, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553. More recently the expert and specialized knowledge of agencies involved has been particularly stressed. See Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576.

United States v. Western Pacific Company, 1956, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126; *see also* Watts v. Missouri-Kansas-Texas Railroad Company, 5th Cir. 1967, 383 F.2d 571, 581; Carter v. American Telephone & Telegraph Company, 5th Cir. 1966, 365 F.2d 486, 493–498, cert. denied 385 U.S. 1008, 87 S.Ct. 714, 17 L.Ed.2d 546.

■■ Primary jurisdiction reference to an agency is favored when it will promote even-handed treatment and uniformity in a highly regulated area or when "sporadic action by federal courts would disrupt an agency's delicate regulatory scheme." United States v. Radio Corporation of America, 1959, 358 U.S. 334, 348, 79 S.Ct. 457, 466, 3 L.Ed.2d 354. The importance of uniformity has been recognized especially in cases involving reasonableness of tariffs or rates. *E. g.,* Arrow Transportation Company v. Southern Railroad Company, 1963, 372 U.S. 658, 83 S.Ct. 984, 10 L. Ed.2d 52; Texas & Pacific Railroad Company v. Abilene Cottonoil Company, 1907, 204 U.S. 426, 27 S.Ct. 350, 51 L. Ed. 553. Similarly, primary jurisdiction reference is favored when the agency possesses expertise in a specialized area with which the courts are relatively unfamiliar. In Watts v. Missouri-Kansas-Texas Railroad Company, *supra*, 383 F. 2d at 583, for example, this court in affirming the applicability of the primary jurisdiction doctrine acknowledged judicial lack of expertise in technical questions of railroad financing.[9]

9. We do not suggest that the necessary computations are purely esoteric or arcane to courts, but we know that the Commission has insights and experience

■ With these principles in mind, we turn to the case at hand. We note at the outset that plaintiffs have not sued under a traditional common law of equity theory or under a statute which is arguably foreign or inimical to the regulatory scheme of the Interstate Commerce Act, but under a section of the Act itself—§ 417(b)(2), 49 U.S.C.A. § 1017(b)(2). Further, the statute itself is not silent on the problem of coordinating the work ōf the district courts and the ICC in this type of action, but makes express provision for coordination. Section 1017(b)(2) provides, "The Commission may appear as of right in any such action," and Section 1017(b)(3) explicitly gives the ICC the power to assert primary jurisdiction in an appropriate case:

> In any action brought under paragraph (2) of this subsection [§ 1017(b)(2)], the Commission may notify the district court of the United States in which such action is pending that it intends to consider the matter in a proceeding before the Commission. Upon the filing of such notice the Court shall stay further action pending disposition of the proceeding before the Commission.

The statute thus gives the ICC power to effect a stay of a § 1017(b)(2) action,[10] but conspicuously omits mention of any corresponding power in the district court when the ICC does not intervene. We think the conferring of power to stay only on the Commission in this thoughtfully designed procedural provision, enacted as an integral part of the regulatory legislation, strongly suggests that Congress intended to supersede and replace the judicial primary jurisdiction doctrine in § 1017(b)(2) suits.

■ The high jurisdictional threshold of § 1017(b)(2) reinforces our conclusion that application of the primary jurisdiction doctrine is inappropriate in suits brought under it. The section gives the district court power to enjoin only a "clear and patent violation of section 1010." Baggett Transportation Company v. Hughes Transportation Company, 8th Cir. 1968, 393 F.2d 710, 716, cert. denied, 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272.[11] That this requirement of a "clear and patent violation" was intended as a jurisdictional one appears clearly in the documents recording the legislative history of the 1965 amendment (P.L. 89–170, 79 Stat. 648) which became § 1017(b). The Conference Report on the bill emphasized this construction:

> The conferees wish to emphasize that the words "clear and patent" in the amendments made by the conference substitute two sections 222(b) and 417(b) of the Interstate Commerce Act are intended as a standard of jurisdiction rather than a measure of the required burden of proof and that the district courts of the United States should entertain only those actions under these sections, as amended, which involve clear and patent attempts to circumvent regulation in the areas involved.

Conference Report No. 810, 89th Cong. 1st Sess. (1965), 1965 U.S.C. Cong. and

---

denied judges. The subleties of railroad financing, encased in jargon and tucked into the intricacies of the administrative scheme may escape us.
Watts v. Missouri-Kansas-Texas Railroad Company, 5th Cir. 1967, 383 F.2d 571, 583.

10. The ICC's power to investigate violations and compel compliance with the statute, rules, or its own orders does not depend on the filing of a complaint by an injured party; it may undertake such action on its own initiative. Interstate Commerce Act, § 403(f), 49 U.S.C.A. § 1003(f).

11. *Baggett* deals with § 222(b)(2) of the Interstate Commerce Act, 49 U.S.C.A. § 322(b)(2), a section enacted in the same 1965 amendment (P.L. 89–170, 79 Stat. 648) as § 1017(b)(2) and identical to it except that § 322(b)(2) deals with violations by motor carriers and brokers rather than violations by forwarders. The conclusions of the *Baggett* court regarding the purposes and jurisdictional requirements of § 322(b)(2) are clearly applicable to § 1017(b)(2) as well.

Admin.News, pp. 2942, 2943. The fact that the district court has power to enjoin only obvious violations largely removes from § 1017(b)(2) litigation the reasons which underlie the primary jurisdiction doctrine. The courts are unlikely to conflict among themselves or with the ICC in deciding clear cases, and judicial action without prior reference to the Commission therefore would not jeopardize uniformity in the administration of the regulatory scheme. Further, the value of the agency's specialized knowledge and expertise is at a minimum in cases involving "clear and patent" violations.

An analysis of the purposes of the 1965 amendment which became the present § 1017(b)(2) further confirms the inappropriateness of applying the primary jurisdiction doctrine in this type of litigation. A major purpose was to hasten enforcement procedures in cases of clear violations. *See* Baggett Transportation Company v. Hughes Transportation Company, *supra* at 715. Before 1965 only the ICC could sue to enjoin unlawful operations; the 1965 amendment allowed broader use by the ICC of this enforcement method by modifying requirements for service of process and, in addition, for the first time gave injured private parties the right to "apply directly to the courts for injunctive relief" [12] without the necessity of

prior, potentially time consuming administrative proceedings. Commenting on the 1965 amendment, Congressman Oren Harris, Chairman of the Committee on Interstate and Foreign Commerce, made clear the congressional intent to avoid delay in the procedures created and to provide a relatively speedy remedy:

> . . . We firmly believe this new enforcement tool will be a good one. It should not be subverted by any practice which will avoid or delay prompt settlement of the issues.[13]

111 Cong.Rec. 9679. Judicial application of the primary jurisdiction doctrine would re-route plaintiffs through administrative proceedings the amendment entitles them to avoid and permit a delay of precisely the type that Congress sought to eliminate in cases of clear violations.

■ In sum, we conclude that application of the judicial primary jurisdiction doctrine is inappropriate in § 1017(b)(2) litigation because (1) the statute expressly provides a method for coordinating the work of courts and the ICC, (2) judicial action which is limited to enjoining "openly and obviously unlawful" [14] operations will not jeopardize the uniform administration of the regulatory system or require a high degree of specialized knowledge on the

---

**12.** House Report No. 253, 89th Cong. 1st Sess. (1965), 1965 U.S.C.Cong. and Admin.News pp. 2923, 2924.

**13.** In Baggett Transportation v. Hughes Transportation Company, 8th Cir. 1968, 393 F.2d 710, cert. denied 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272, the Eighth Circuit noted Congressman Harris' statement and commented:

The congressional concern evidenced by Congressman Harris' remarks is well placed. The goal of seeking more efficient action through the administrative process than can be obtained through the courts has not always been realized. There is in the first instance the undue delay that may result from the administrative decision-making process itself. See 1 Davis, Administrative Law § 8.08, pp. 548–50. Further delay in effectively enforcing the administrative decision can

result from lengthy review proceedings of the administrative action in the courts. For example, a three year delay in enforcing the administrative regulation in the *Covington Mills* case eventually succeeded in rendering a valid administrative decision moot. Mitchell v. Covington Mills, 1955, 97 U.S.App.D.C. 165, 229 F.2d 506, cert. denied, 1956, 350 U.S. 1002, 76 S.Ct. 546, 100 L.Ed. 865, see, Gelhorn & Byse Administrative Law, pp. 232–35.

The over nine-year long pendency of Brinke's freight forwarder permit application before the ICC provides a striking example of the delay that sometimes characterizes the administrative decision-making process.

**14.** House Rep. No. 253, 89th Cong. 1st Sess. (1965), 1965 U.S.C.Cong. and Admin.News, pp. 2923, 2931.

part of the courts, and (3) primary jurisdiction reference of cases brought under § 1017(b)(2) would thwart Congress's intention to provide a relatively speedy enforcement procedure and remedy for injured parties. If a plaintiff cannot show a "clear and patent" violation, the proper disposition of his complaint is dismissal for want of jurisdiction; if he can, he is entitled to injunctive relief.

### III. Denial of Preliminary Injunction

The district court denied the preliminary injunction sought by plaintiffs because it found:

> Plaintiffs have failed to show irreparable injury as a consequence of defendant's activities. Defendant, on the other hand, has been continuously providing transportation services of the same nature since issuance of its broker's license previously referred to and would suffer irreparable injury if required to terminate such operations.

It is well established that the granting or denying of a preliminary injunction is a matter addressed to the sound discretion of the district court. Exhibitors Poster Exchange, Inc. v. National Screen Service Corporation, 5th Cir. 1971, 441 F.2d 560; *see* 7 Moore's Federal Practice ¶ 65.04 (2d ed. 1972). The intended function of a preliminary injunction is to preserve the status quo pendente lite, and in deciding whether to issue it, the district court in this case properly weighed the damage the injunction would cause the defendant against the harm plaintiffs would suffer without it.

We think the district court was clearly correct in finding that denial of the preliminary injunction sought would best preserve the status quo pendente lite and prevent irreparable injury to either party. Perceiving no abuse of discretion, we affirm the denial of the preliminary injunction.

Affirmed in part; vacated in part; and remanded.