[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-10740
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cv-24045-FAM


EDDIE I. SIERRA,

Petitioner - Appellant,

versus

CITY OF HALLANDALE BEACH, FLORIDA,

Respondent - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 27, 2018)

Before TJOFLAT, MARCUS, and ROSENBAUM, Circuit Judges.

TJOFLAT, Circuit Judge:

This case asks us to decide 1) whether the Twenty-First Century

Communications and Video Accessibility Act of 2010 creates an administrative

exhaustion requirement that must be satisfied as a prerequisite to bringing certain claims under § 505 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act of 1990 and 2) whether—if exhaustion is not required— abstention is nonetheless warranted under the primary-jurisdiction doctrine.  After reviewing the statutes, their histories, and relevant caselaw, we answer both questions in the negative.

## I.

Plaintiff Eddie Sierra is deaf.  He filed this suit against the City of Hallandale Beach, Florida ("City"), alleging violations of § 505 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794, and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12132.

Sierra's Complaint focuses on video content stored on four webpages that he alleges belong to City or for which City is otherwise responsible.  These webpages are 1) www.hallandalebeachfl.gov, 2) www.hallandalebeach360.net, 3) Facebook, and 4) a webpage entitled "Hallandale Beach Tour Book."  With the exception of Facebook, he appends to his Complaint at Exhibit A various screenshots of each of these four webpages.

Sierra alleges that none of the four webpages provided closed captioning and that both the Rehabilitation Act and ADA require that captioning.  He seeks damages as well as injunctive and declaratory relief to guarantee hard-of-hearing

2

individuals like himself "equal, effective[,] and timely access" to City's publicly available online video content.

City responded by moving to dismiss Sierra's complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. It argued that the Twenty-First Century Communications and Video Accessibility Act of 2010 ("CVAA") presents a jurisdictional hurdle to suits like Sierra's.[1] In its view, before Sierra could file a suit in district court, he was first required to lodge a complaint with the Federal Communications Commission ("FCC"). Only if the FCC then failed to take action on that complaint, City argued, could Sierra sue under the Rehabilitation Act and ADA.

The District Court granted City's Motion to Dismiss, holding that the CVAA does indeed pose an exhaustion requirement and finding that the videos of City's meetings stored at www.hallandalebeachfl.gov fall within the CVAA's purview.[2]

---

[1] A bit of housekeeping on terminology is in order. The core issue in this case is whether 47 U.S.C. § 613(j), explained further below, imposes an exhaustion requirement before a plaintiff may file suit under the Rehabilitation Act or Title II of the ADA. Because § 613 is the product of various statutory amendments, we briefly explain how the statute reached its current form. The Twenty-First Century Communications and Video Accessibility Act of 2010, Pub. L. No. 111-260, 124 Stat. 2751, amended the Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, which in turn amended the Communications Act of 1934, Pub. L. No. 73-416, 48 Stat. 1064.

The CVAA directed the FCC to issue new closed-captioning regulations for content delivered over the internet. § 202, 124 Stat. at 2770–71. The 1996 Act, however, inserted what City contends is the exhaustion requirement. § 255, 110 Stat. at 76. Because the parties refer to this requirement as the CVAA, we do the same for simplicity.

[2] The FCC's regulations impose closed-captioning requirements, with some exemptions, on video programming delivered over the internet "if the programming is published or exhibited

3

As to the remaining three webpages referenced in Sierra's Complaint, the Court found "no affirmative indication, whatsoever, that any of the videos or websites listed in Exhibit A are government websites run by Defendant."

The District Court dismissed Sierra's Complaint without prejudice and advised him that he was free to file suit again after he files a complaint with the FCC under the CVAA and after the FCC completes its review process.

## II.

We now address the two issues on appeal: whether the CVAA poses a jurisdictional bar to Sierra's claims and whether abstention under the primary-jurisdiction doctrine is otherwise warranted. We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See Barbour v. Haley*, 471 F.3d 1222, 1225 (11th Cir. 2006).[3]

---

on television in the United States with captions." 47 C.F.R. § 79.4(b)(1). In other words, only content delivered over the internet that is captioned in its original format is itself required to be captioned.

Because the District Court believed that the CVAA imposes an exhaustion requirement, and thus that the statute had the potential to preclude its jurisdiction, the Court undertook a factual inquiry as to whether the webpages at issue were shown on television with captions. It concluded that they were.

[3] The parties argue over the standard of review that this Court must apply when reviewing a district court's factual determinations made pursuant to a motion to dismiss under Rule 12(b)(1). They do so because the District Court engaged in fact-finding to determine that the first webpage, www.hallandalebeachfl.gov, falls within the CVAA's ambit—that is, that the content there posted was originally televised with captions.

Because we conclude, contrary to the District Court, that the CVAA does not pose an exhaustion requirement, we have no need to address this issue on appeal.

4

A.

Congress passed the CVAA in 2010 to expand the protections offered to persons with disabilities.  The legislative history reveals Congress' concern that the "extraordinary benefits" of technologies like smart phones, GPS, and video conferencing—"technologies that Americans rely on daily"—"are often still not accessible to individuals with disabilities."  H.R. Rep. No. 111-563, at 19 (2010).  To solve that problem, the CVAA directed the FCC to undertake, among other things, rulemaking requiring the "provision of closed captioning on video programming delivered using Internet protocol that was published or exhibited on television with captions after the effective date of such regulations."  47 U.S.C. § 613(c)(2)(A).

The CVAA left intact two other statutory provisions relevant to this appeal, both carried over from the Telecommunications Act of 1996.  (Recall that the Telecommunications Act of 1996 and the CVAA each amended their parent statute, the Communications Act of 1934.)

- The first is a savings clause that preserves all rights of action outside of the Communications Act itself.  *See* 47 U.S.C. § 152 note (Applicability of Consent Decrees and Other Law) ("This Act and the amendments made by this Act shall not be construed to modify, impair, or supersede Federal,

State, or local law unless expressly so provided in such Act or amendments.").[4]

- The second is a provision that both provides the FCC with exclusive jurisdiction over complaints filed under 47 U.S.C. § 613 and expresses that § 613 creates no new causes of action.  *See* 47 U.S.C. § 613(j) ("Nothing in this section shall be construed to authorize any private right of action to enforce any requirement of this section or any regulation thereunder.  The Commission shall have exclusive jurisdiction with respect to any complaint under this section.").  The FCC's regulations, moreover, provide a procedure whereby a person can bring a complaint against an entity in violation of the closed-captioning requirements.  *See* 46 C.F.R. § 79.4(e).

B.

We begin our discussion of the District Court's jurisdiction with an unremarkable proposition: the lower federal courts are creatures of Congress, which may thus limit their jurisdiction as it sees fit.  *See* U.S. Const. art. III, § 1.  Once Congress has granted jurisdiction, however, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them."  *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 1246 (1976) (citations omitted).  Before determining that an administrative remedy bars

---

[4] The references to "Act" refer to the parent statute, the Communications Act of 1934.  *See* 47 U.S.C. § 152 note (References in Text).

6

our jurisdiction, then, we look for "clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision." *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (quoting *I.A.M. Nat'l Pension Fund Benefit Plan C v. Stockton Tri Indus.*, 727 F.2d 1204, 1208 (D.C. Cir. 1984)).

Because Sierra has pled federal causes of action, the District Court had jurisdiction under 28 U.S.C. § 1331 to hear his Rehabilitation Act and ADA claims.[5]  City does not dispute that Sierra has asserted claims only under the Rehabilitation Act and ADA.  City instead raises two arguments on appeal to support its jurisdictional argument, neither of which we find persuasive.[6]  First, that Congress in enacting the CVAA created an exhaustion requirement for certain suits brought under the Rehabilitation Act and ADA.  And second, that abstention

---

[5] The District Court clearly had subject-matter jurisdiction under § 1331, so we do not address Sierra's assertion that 28 U.S.C. § 1343 also confers jurisdiction.

[6] City also seems to raise a third argument: that Sierra has pled no cause of action upon which relief can be granted.  *See* Appellee's Br. at 15 ("Sierra's argument that the ADA and Rehabilitation Act apply is dubious.").  City has waived this argument by failing to preserve it before the District Court.  *See Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1353–54 (11th Cir. 1998) ("[A]lthough we may determine *sua sponte* whether subject matter jurisdiction exists, we will not decide whether the plaintiff failed to state a claim unless the defendant preserved that defense in the district court pursuant to Fed. R. Civ. P. 12(h)(2)." (citations omitted)).  This appeal arises from a motion to dismiss for lack of subject-matter jurisdiction, not for failure to state a claim upon which relief can be granted.  As City chose not to include a 12(b)(6) motion along with its 12(b)(1) motion, it has waived the issue.  *See* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion.").

7

is warranted under the primary-jurisdiction doctrine.  We address each argument in turn.

1.

First, City argues that the CVAA bars Sierra's claims "because the CVAA grants the FCC exclusive jurisdiction over closed captioning complaints."  Fair enough.  But Sierra has not brought a complaint under 47 U.S.C. § 613; he has brought one under the Rehabilitation Act and Title II of the ADA.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987) (observing that the plaintiff is the "master of the claim" under the well-pleaded complaint rule, which permits a litigant to choose under what causes of action to sue).

City's misunderstanding stems from its overbroad reading of the statute.  It argues that the CVAA grants the FCC "exclusive jurisdiction over *issues* concerning closed captioning of videos streamed on the internet."  Congress was not so imprecise.  Instead, Congress granted the FCC "exclusive jurisdiction with respect to any complaint *under this section*."  47 U.S.C. § 613(j) (emphasis added).  Whereas issues concerning closed captioning of video content delivered over the internet could arise in many contexts—including, as here, in the context of disabilities statutes—issues concerning complaints under § 613(j) can arise in one place only: § 613(j) itself.  In short, § 613(j) does nothing more than prevent

someone wanting to bring a complaint under that section from doing so anywhere other than before the FCC.

The Ninth Circuit has reached the same conclusion that we reach today— that the FCC's exclusive jurisdiction over complaints brought under the CVAA bears in no way on complaints brought under other statutes.[7] *See Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.* (*GLAAD*), 742 F.3d 414, 429 (9th Cir. 2014) ("Although the CVAA and the FCC's implementing regulations do not 'authorize any private right of action to enforce any requirement *of this section*' and instead provide that the FCC 'shall have exclusive jurisdiction . . . over any complaint under this section,' the FCC's exclusive jurisdiction over complaints under the CVAA does nothing to extinguish [the plaintiff's] right to pursue broader relief for online captioning under [California state law]." (alteration and citations omitted)).

City attempts to distinguish *GLAAD* on two grounds. It correctly observes that *GLAAD* involved a claim under state law—not federal law. But this distinction is without a difference: the savings provision treats all law equally. *See* 47 U.S.C. § 152 note (Applicability of Consent Decrees and Other Law) ("This Act and the amendments made by this Act shall not be construed to modify,

---

[7] So too has the District of Massachusetts. *See Nat'l Ass'n of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196, 205 (D. Mass. 2012) ("There is no indication that the CVAA . . . extinguishes private rights of action under the ADA for closed captioning of video programming on the Internet.").

impair, or supersede *Federal, State, or local law* unless expressly so provided in such Act or amendments." (emphasis added)).  City also observes that the state law at issue in *GLAAD* addressed closed captioning, whereas the Rehabilitation Act and the ADA supposedly do not.  But that observation merely begs the question of what types of actions can be maintained under the statutes, an inquiry that the District Court did not reach and thus that we do not address.

Despite the CVAA's plain text, despite the savings provision, despite the legislative history indicating Congress' intent to broaden (not narrow) relief, and despite the caselaw to the contrary, City offers three district-court cases in support of its position: *Sierra v. Sch. Bd.*, No. 16-CV-63021, 2017 WL 1423956 (S.D. Fla.), *appeal dismissed*, No. 17-12301-DD, 2017 WL 5591800 (11th Cir. Sept. 27, 2017); *Zulauf v. Ky. Educ. Television*, 28 F. Supp. 2d 1022 (E.D. Ky. 1998); and *Johnson v. Hairston*, No. 3:06-CV-812-WKW, 2007 WL 748479 (M.D. Ala. Mar. 8, 2007).  As *Sierra* relied exclusively on *Zulauf* and *Johnson* in conducting its analysis, we limit our discussion to those two cases.

*Zulauf* concluded that 47 U.S.C. § 613 imposes an exhaustion requirement. Otherwise, the court reasoned, the statute "would be rendered meaningless because every plaintiff would circumvent this provision by suing under the ADA and § 504."  28 F. Supp. 2d at 1024 (footnote omitted).  The court offered no support for this conclusion, and it is plainly incorrect.

10

The conclusion fails to recognize that not everyone has the option to sue under the Rehabilitation Act and ADA.  The former, for example, requires a defendant that is a recipient of federal funding.  *See* 29 U.S.C. § 794(a) (requiring that a prospective plaintiff be subjected to discrimination "under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service").  The latter requires a defendant that is a governmental entity.  *See* 42 U.S.C. § 12132 (requiring that a prospective plaintiff be "excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity"); *id.* at § 12131 (defining "public entity" to mean, among other things, "any State or local government").  In other words, though some plaintiffs may be able to sue under the Rehabilitation Act or ADA, not all are so lucky.

*Johnson*, which also concluded that 47 U.S.C. § 613 requires exhaustion, is likewise unpersuasive.  As an initial matter, the court in reaching its decision did not have the full benefit of the adversarial process.  The plaintiff there proceeded *pro se*, twice failed to meet the court's briefing deadlines, and when the court nonetheless offered him an oral hearing to explain the merits of his case, declined to appear.  *Johnson*, 2007 WL 748479, at *1−2.  And because the *pro se* plaintiff filed a "letter complaint" that was "confusing" and failed to plead a "cognizable

11

claim," even the cause of action at issue in the case is unclear. *Id.* at *1. For all we know, the plaintiff proceeded under the CVAA, a complaint over which no party to this case disputes that the FCC would have exclusive jurisdiction.

2.

Second, City argues that the District Court should have abstained under the primary-jurisdiction doctrine. We disagree.

Unlike when a court lacks subject-matter jurisdiction, the primary-jurisdiction doctrine applies when a court maintains jurisdiction over a matter but nonetheless abstains for prudential reasons. *See Mercury Motor Exp., Inc. v. Brinke*, 475 F.2d 1086, 1092 (5th Cir. 1973) (explaining that while "'[e]xhaustion' applies when a claim is cognizable in the first instance by an administrative agency alone," primary jurisdiction applies when a claim "is originally cognizable in the courts" yet when "enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body" (citation omitted)).[8] As a prudential doctrine, it aims to "protect[] the administrative process from judicial interference." *Boyes v. Shell Oil Prods. Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000); *see also S. Utah Wilderness All. v. Bureau of Land Mgmt.*, 425 F.3d 735, 750 (10th Cir. 2005), *as amended on*

---

[8] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*denial of reh'g* (Jan. 6, 2006) ("Primary jurisdiction is a prudential doctrine designed to allocate authority between courts and administrative agencies.").

In deciding whether abstention under the primary-jurisdiction doctrine is appropriate, we consider two factors: the "expertise of the agency deferred to" and the "need for a uniform interpretation of a statute or regulation." *Id.* In invoking the doctrine, we stay further proceedings pending the outcome of an administrative ruling. *Id.*

For reasons described below, the primary-jurisdiction doctrine does not apply to this case.

a.

To begin with, the FCC itself has indicated that a plaintiff is not required to exhaust remedies under the CVAA to sue under other federal statutes. When issuing regulations in 1997—in the wake of the Telecommunications Act of 1996—the FCC recognized that the statute operated parallel to other federal statutes on the same subject:

> We note that entities that qualify for an exemption under Section 713 may be obligated under other federal statutes, such as the ADA, to make their services and programs . . . accessible to an individual with a disability upon request. We do not intend our rules to preclude or supersede the operation of any other federal laws that may require an entity exempt from Section 713 to make its video programming services accessible to people with disabilities.

13

Closed Captioning and Video Description of Video Programming, Report to Congress, 13 FCC Rcd. 3272, 3342 n.534 (1997).

The FCC reaffirmed this belief once again in a case involving the *plaintiff in this suit*. In *Sierra*, discussed above and which the District Court below relied upon, the court, like the Court here, directed Sierra to exhaust his remedies before the FCC. *Sierra*, 2017 WL 1423956, at *4. Sierra did so and received a written response from the agency. Though noting that the defendant in that case was exempted from the captioning requirement, the FCC went on to explain that Sierra had remedies apart from the CVAA:

> Notwithstanding [the exemption], when it adopted the closed captioning mandates for television, the Commission made clear that entities that qualify for an exemption from the FCC's closed captioning requirements may be obligated under other federal statutes, such as the [ADA], to make their services and programs, including video programming services, accessible to individuals with disabilities.

Fed. Commc'ns Comm'n, Opinion Letter on FCC Complaint Ticket #1578109: Eddie Sierra (May 17, 2017).

Because the primary-jurisdiction doctrine is prudential, not jurisdictional, we see no reason why deference to an agency is appropriate when that agency itself feels that no deference is warranted. For thoroughness, however, we address the two factors—expertise and uniformity—to further explain why the primary-jurisdiction doctrine has no application here.

14

b.

First, the FCC has no expertise on the issue that would be before the District Court—which is whether the Rehabilitation Act and ADA recognize a cause of action for failure to provide closed captioning.  Though the FCC undoubtedly has expertise on closed-captioning requirements, its charge under the CVAA bears not one iota on what constitutes a violation under the Rehabilitation Act or ADA.  Indeed, courts do not automatically grant primary jurisdiction to an agency in interpreting its *own* statute, let alone a statute over which they have no authority.  In *FTC v. Verity Int'l, Ltd.*, 443 F.3d 48 (2d Cir. 2006), for example, the Second Circuit declined to invoke the primary-jurisdiction doctrine in favor of the FCC when the question presented involved the meaning of terms in the Communications Act.  *Id.* at 60.  The court noted that "while the classification issue is within the FCC's discretion in the sense that the FCC is charged with administering the Communications Act, nothing about the terms invokes the FCC's discretion in the same way that more abstract statutory terms such as 'reasonable' or 'public interest' do."  *Id.* at 61 (citation omitted).  In short, the statutory interpretation task in this case presents no issue demanding the FCC's expertise.

Second, this case presents no special need for uniformity apart from the general need for uniformity that the law requires.  In the context of the primary-jurisdiction doctrine, uniformity takes on a narrow meaning.  We have recognized,

15

for example, the importance of uniformity "especially in cases involving reasonableness of tariffs or rates." *Brinke*, 475 F.2d at 1092 (first citing *Arrow Transp. Co. v. S. R.R. Co.*, 372 U.S. 658, 83 S. Ct. 984 (1963); and then citing *Tex. & Pac. R.R. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 27 S. Ct. 350 (1907)).

*Abilene Cotton*, in which the Supreme Court first explained the primary-jurisdiction doctrine, helps explain why uniformity takes on special significance in rate-setting cases. The issue in *Abilene Cotton* was who determines what constitutes "just and reasonable rates" for carriers to set: courts or the Interstate Commerce Commission ("ICC"). *See* 204 U.S. at 437, 27 S. Ct. at 354. Before Congress enacted a regulatory scheme, carriers would charge varying rates based on "unjust preferences and discriminations." *Id.* To counter those behaviors, the Interstate Commerce Act ("Act") required carriers to "establish[] and publish[] schedules of such rates" and forbade them from "depart[ing] from the rates in the established schedules" unless under procedures set by the Act. *Id.* The Court concluded that the ICC—not courts—must set the rates. *Id.* at 448, 27 S. Ct. at 358. In doing so, it emphasized that judicial determination of rates, from one jurisdiction to another, would "destroy the prohibitions against preferences and discrimination" and "afford . . . a ready means by which, through collusive proceedings, the wrongs which the statute was intended to remedy could be successfully inflicted." *Id.* at 441, 27 S. Ct. at 355. Said differently, promoting

16

uniform interpretation was not necessary to its own end but to achieve the statute's purpose: fairer competition.

*Abilene Cotton* illustrates why uniformity is not required here. To be sure, courts may take different positions on whether Sierra's claims are cognizable under the Rehabilitation Act and ADA. But divergent interpretation would not defeat the two statutes themselves. *Abilene Cotton* presented a zero-sum game. If the rates were not uniform, one carrier could benefit at another's expense by gaining an edge in the marketplace. This case presents no such problem because one plaintiff benefiting from a more favorable interpretation of the Rehabilitation Act or ADA does not do so at some other plaintiff's expense.

Because this case begs questions of statutory interpretation in two statutes over which the FCC is not charged with enforcing and over which the FCC has no expertise, and because the FCC itself rejects primary jurisdiction, the District Court had no reason to invoke the doctrine.

## C.

One additional matter deserves our attention: the District Court's determination that three of the four webpages do not belong to City.

Recall that Sierra alleges that four webpages, belonging to or over which City is responsible, violate the Rehabilitation Act and ADA. Those websites are 1) www.hallandalebeachfl.gov, 2) www.hallandalebeach360.net, 3) Facebook, and 4)

a webpage entitled "Hallandale Beach Tour Book."  When addressing the three webpages other than www.hallandalebeachfl.gov, the District Court appeared to treat City's 12(b)(1) motion as a 12(b)(6) motion.  *See Sierra v. City of Hallandale Beach*, No. 17-24045-CIV, 2018 WL 618446, at \*2 (S.D. Fla. Jan. 26, 2018) ("Notwithstanding page six, there is no affirmative indication, whatsoever, that any of the videos or websites listed in Exhibit A are governmental websites run by Defendant.  To the extent that the videos alleged in the Complaint are not videos on Defendant's government website, Defendant is not the proper party to this suit.").  If those three webpages do not implicate City, as the Court found, Sierra will have failed to state a claim against City upon which relief can be granted.  He will instead, as the Court observed, have to file suit against the proper party.  But that inquiry does not bear on the Court's jurisdiction to hear the case—which was the only question properly before it on City's 12(b)(1) motion.[9]

III.

Because we determine that Plaintiff properly invoked the District Court's jurisdiction, we vacate the Court's grant of City's Motion to Dismiss for Lack of

---

[9] We recognize, of course, that Sierra must state a claim for relief that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)).  Though some authority suggests that a district court may *sua sponte* dismiss for failure to state a claim, *see Holbrook v. Castle Key Ins. Co.*, 405 F. App'x 459, 460 (11th Cir. 2010) (citing *Jefferson Fourteenth Assocs. v. Wometco de P.R., Inc.*, 695 F.2d 524, 526–27 (11th Cir. 1983)), we are unsure of the District Court's intention when deciding City's motion.  Because City did not challenge Sierra's claims—only the Court's jurisdiction—we have no reason to think that the Court intended to dismiss the Complaint for failure to state a claim upon which relief can be granted.

18

Subject-Matter Jurisdiction and remand for further proceedings not inconsistent with this opinion.

**SO ORDERED.**