QUALITY EXCHANGE, INC., Plaintiff,

v.

UNIVERSAL AIR FREIGHT,
INC., Defendant.

No. C–C–83–707–M.

United States District Court,
W.D. North Carolina,
Charlotte Division.

Nov. 15, 1983.

Joseph L. Steinfeld, Jr., Sims, Walker & Steinfeld, Washington, D.C., and Janine W. Cutcher, Egerton, Marshall & Cutcher, Greensboro, N.C., for plaintiff.

R. Dennis Lorance, Harris, Bumgardner & Carpenter, Wade Mitchem, Jr., Gastonia, N.C., and James Helms, Charlotte, N.C., for defendant.

## ORDER

McMILLAN, District Judge.

On August 25, 1983, plaintiff Quality Exchange moved the court for a preliminary injunction restraining defendant Universal Air Freight and its officers, employees, and representatives from operating as a surface freight forwarder as defined in 49 U.S.C. § 10102(9). A hearing on plaintiff's motion was conducted on September 6, 1983.

On September 9, 1983, the court entered an order directing the parties to supply to the court (1) citations of authority concerning the *propriety* of district court action on an Interstate Commerce Commission certificate where the Commission has made no ruling concerning the certificate; (2) citations of authority concerning the *power* of the district court to act until such time as the Interstate Commerce Commission has decided whether or not it will act; and (3) any further proof any party wished to offer on the merits of the request for preliminary relief. The parties were given until September 19, 1983, to respond to the court's order.

Since the entry of the September 9, 1983 order, the court has received memoranda of law from both parties. The court has also received a copy of a letter signed by an assistant deputy director of the Office of Compliance and Consumer Assistance of the Interstate Commerce Commission indicating that the enforcement section of the Commission has no present intention to become involved in this case.

For the reasons stated below, plaintiff's motion for preliminary injunction is DENIED.

1. *Factual Background.*

Plaintiff Quality Exchange is a common carrier and contract carrier authorized by the Interstate Commerce Commission (ICC) to transport various named commodities, including general commodities, by truck, between points in the United States. Quality's authority to transport general commodities in interstate commerce was not obtained until June 9, 1983.

Defendant Universal Air Freight is a licensed air freight *forwarder*, authorized to contract and arrange for the transportation of commodities *by air*, and, in certain narrowly drawn ICC-exempt situations, by truck.

In June, 1983, Universal applied to the ICC for authority to operate as a *surface* or *land* freight forwarder, so that it could contract and arrange for the transportation of commodities by truck. That application is still pending.

During the course of discovery in C–C–83–0131–M, Quality discovered evidence which, Quality alleges, proves that Universal is and has been operating as an unlicensed *surface* freight forwarder in direct violation of federal transportation law. Subsequently, Quality initiated the present suit to obtain injunctive relief from Universal's allegedly illegal and damaging activity.

2. *The court's jurisdiction.*

██ This action was brought pursuant to 49 U.S.C. § 11708, entitled "Private enforcement: motor carrier and freight forwarder licensing." That section provides in pertinent part:

> (a) If a person provides transportation by motor vehicle or service of a freight forwarder in clear violation of section [10921] of this title, a *person injured* by the transportation or service may bring a

civil action to enforce any such section. (Emphasis added.)

Subsection (b) of this statute affords the Interstate Commerce Commission an opportunity to intervene in any suit brought under § 11708. If, however, the Commission chooses not to intervene, the district court has the duty to decide all questions properly presented under this civil enforcement statute. *See, Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086 (5th Cir.1973).

U.S.C. Title 49 § 10921 provides that *land* freight forwarding services may only be provided by a person who holds an appropriate permit from the Interstate Commerce Commission. Universal does *not* have authority to operate as a *land* freight forwarder. Universal presently operates as an *air* freight forwarder, deriving its authority from the Civil Aeronautics Board.

Under federal transportation law, an air freight forwarder may utilize only three types of non-ICC licensed surface freight forwarding:

(A) transportation of passengers by motor vehicle incidental to transportation by aircraft;

(B) transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, has been or will be transported by an air carrier or (to the extent so agreed by the United States and approved by the Civil Aeronautics Board or its successor agency) by a foreign air carrier; or

(C) transportation of property by motor vehicle in lieu of transportation by aircraft because of adverse weather conditions or mechanical failure of the aircraft or other causes due to circumstances beyond the control of the carrier or shipper; ....

49 U.S.C. § 10526(a)(8).

Quality alleges that a substantial portion of Universal's business is devoted to *land* freight forwarding services which do not fall under any of the above three exceptions to the surface freight forwarding licensing requirement. Particularly, Quality alleges that Universal regularly arranges to transport freight which the airlines are unable to carry due to aircraft space limitations. Universal then, according to the evidence submitted by Quality, arranges to have this freight transported by truck (surface transport), while continuing to promise its customers that the freight will be transported by air. The sole evidence tendered by plaintiff to support this charge is a portion of the deposition testimony given by Universal's president, Joseph Bruzzese, in connection with Case No. C–C–83–0131–M.

During his deposition, Bruzzese freely admitted that Universal arranges for the transport of as much "air" freight as it is able to solicit, and then tenders this freight to motor carriers if the airlines do not have sufficient "lift" to carry the freight during the time that Universal wants the freight delivered. Bruzzese gave the opinion at his deposition that this air freight was exempt from ICC regulation.

In its brief in opposition to Quality's motion for summary judgment, Universal again admits that it arranges for truck transportation of its freight when the airlines do not have sufficient "lift." Universal states in its brief that "[t]his is not Universal's problem," and implies that the responsibility for this controversy lies with the airlines for their failure to provide sufficient planes on Fridays, the time when most of Universal's freight is tendered to motor carriers. Defendant's Brief at 5.

■ The first question before the court is whether Universal's conduct constitutes a "clear violation" of federal transportation law. 49 U.S.C. § 11708(a). Unless the court finds a clear violation on Universal's part, the case cannot proceed, for that language is a standard of jurisdiction rather than a measure of the required burden of proof. *Mercury Motor Express v. Brinke, supra,* 1093; *Tri-State Motor Tr. Co. v. International Transport, Inc.,* 479 F.2d 171 (8th Cir.1973). *See,* 1965 U.S.Code, Cong. & Admin.News, 2931.

Universal claims that its conduct is authorized by the Civil Aeronautics law. No statute of aeronautics law is cited in support of this contention. The only law which appears to apply to the facts as they have been presented to the court is the plainly worded language of Title 49 which governs the jurisdiction of the Interstate Commerce Commission over motor-carrier freight. Universal claims an ICC exemption for its surface freight under 49 U.S.C. § 10526(a)(8)(C). That section provides that freight intended to be transported by air is exempt from ICC licensing requirements when it is transported by truck because of adverse weather conditions, mechanical failure of the aircraft, or "circumstances beyond the control of the carrier or shipper." Considering the facts before the court, no other section of Title 49 would appear on its face to provide Universal with a possible exemption for its freight from ICC licensing requirements.

The Interstate Commerce Commission, which exercises jurisdiction over surface freight licensing requirements, has consistently held that overbooking or oversolicitation of airspace does not create the type of emergency situation contemplated by § 10526(a)(8)(C). *Motor Transp. of Property Incidental to Air*, 95 M.C.C. 71 (1964); *Air Freight, Inc., Extension—Philadelphia Air Terminal Area*, 108 M.C.C. 197 (1968); *Mid-Continent Delivery, Inc., Common Carrier Application*, MC–150963 (UP September 9, 1981, Review Board # 2). Universal has not submitted, and the court has not located, any contrary authority on this subject.

██ The evidence submitted by Quality in support of its motion, and the admissions by Universal, establish a "clear violation" of Title 49 for this court's jurisdictional purposes.

██ Universal says that this court can not find a clear violation on Universal's part unless the Interstate Commerce Commission or the Civil Aeronautics Board has first made that identical determination. This is not a correct interpretation of the law. The purpose of § 11708 is to provide prompt and effective protection for innocent persons injured by the clearly illegal operations of other carriers, by giving injured persons the right to apply for injunctive relief independently of any Interstate Commerce Commission proceedings. *Baggett Transportation Co. v. Hughes Transportation, Inc.*, 393 F.2d 710, 715–716 (8th Cir.1968). The Commission's decisions are clear and do not leave the court in doubt as to how the defendant's behavior would be interpreted if the Commission were to exercise its discretionary right of primary jurisdiction. *Cf., Tri-State Motor Tr. Co. v. International Transport, Inc., supra*, at 176.

*City of El Paso v. Autobuses Internacionales S. de R.L.*, 526 F.Supp. 5 (D.Texas 1980), *aff'd.*, 663 F.2d 105 (5th Cir.1981), cited by Universal in support of its contention that the Interstate Commerce Commission should have original jurisdiction over this action, is not applicable to this case. The *City of El Paso* court held that the Commission is the proper forum in which to seek modification or revocation of an apparently valid licensing certificate. 526 F.Supp. at 13. In this case, defendant apparently has *no* certificate to authorize its activities. Plaintiff does not seek modification or revocation of an existing certificate; rather plaintiff seeks to enjoin activity which it alleges runs outside the scope of a valid certificate.

*3. Quality's standing to sue.*

An action may be maintained under § 11708 by "a person injured by the transportation or service." Quality alleges that it has been injured by Universal's transportation service in that (1) Universal has failed to pay Quality for Quality's trucking services (the subject matter of case No. C–C–83–0131–M); (2) Quality is disadvantaged in competing with Universal for weekend freight because Quality, a surface carrier, cannot promise air freight service to its customers; and (3) Universal, by operating without ICC authority, is unfairly advantaged because it can avoid the Commission's 30-day tariff approval period.

Universal's alleged breach of contract has not yet been established, and the court will not rely solely on allegations of breach to determine whether Quality has been injured by Universal's activities.

Quality has submitted no evidence to the court to support its claims of competitive disadvantage in advertising promotions or tariff setting. Thus the court is not satisfied that Quality is a "person injured" within the meaning of 49 U.S.C. § 11708. While Quality's allegations of disadvantage are sufficient to allow this case to continue to final determination, the evidence before the court is *not* sufficiently strong to support relief at this time.

4. *Preliminary Injunction.*

 In determining whether a preliminary injunction should issue, this court is guided by the rule of *Blackwelder Furniture Co., etc. v. Seilig Mfg. Co., Inc.,* 550 F.2d 189 (4th Cir.1977); the court must apply a balance-of-hardship test, weighing the probable irreparable injury to the plaintiff without an injunction against the likely harm to the defendant with an injunction. 550 F.2d at 196. During this balancing process the court must also consider the public interest.

Neither party has presented sufficient evidence of hardship to justify equitable relief.

The only substantive evidence of harm tendered by Quality concerns Universal's alleged breach of contract, a claim for which Quality already has an adequate remedy at law. *See,* N.C.Gen.St. § 25–1–106(2). No irreparable injury will accrue to Quality if an injunction is not entered.

Universal has tendered no evidence that it would be harmed by an injunction. This paucity of evidence to support Universal's defense is surprising when considered in light of (1) Universal's admission that it engages in practices unquestionably condemned by the ICC, and (2) Universal's failure to supply the court with authority to support its contention that its practices are authorized by law.

While the public interest requires that land freight forwarders be prevented from operating without proper Interstate Commerce Commission authority, the court does not consider it equitable at this time, on the basis of the evidence before it, to order the extraordinary relief requested by plaintiff.

IT IS THEREFORE ORDERED that the request for preliminary equitable relief is DENIED.