**ASPEN LIMOUSINE SERVICE, INC., d/b/a Vans to Vail, Inc., Plaintiff,**

v.

**COLORADO MOUNTAIN EXPRESS, INC., Defendant.**

**Civil Action No. 95–K–1345.**

United States District Court, D. Colorado.

March 19, 1996.

Mark W. Williams, Berryhill, Cage & North, P.C., Denver, CO, for Plaintiff.

Thomas J. Burke, Jr., David E. Driggers, Jones & Keller, P.C., Denver, CO, for Defendant.

## MEMORANDUM OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KANE, Senior District Judge.

Aspen Limousine Service, Inc. d/b/a Vans to Vail, Inc. ("ALS") brought this private enforcement action against Colorado Moun-tain Express, Inc. ("CME") under the "self-help" provision of the Interstate Commerce Act, 49 U.S.C. § 11708. ALS alleges CME violated 49 U.S.C. § 10922(c)(2)(J), as a result of CME's operations transporting passengers wholly within the state of Colorado.

Both parties have moved for summary judgment. CME seeks dismissal on the ground that ALS cannot show that CME engaged in a "clear violation" of the applicable statutes. In addition, CME asks for an award of attorney fees and costs pursuant to 49 U.S.C. § 11708(c). ALS seeks to enjoin CME permanently from running intrastate routes in Colorado, alleging that CME operations "clearly violate" the applicable statutes because 1) CME lacks actual, regularly scheduled interstate routes and 2) its vehicles do not cross state lines. Generally, ALS' argument focuses on § 10922(c)(2)(B), which authorizes the Interstate Commerce Commission ("ICC") to issue certificates approving intrastate motor carrier services conducted independent of interstate services.[1] In particular, ALS asserts enactment of § 10922(c)(2)(J) makes necessary a new analysis to determine what constitutes interstate services.

### I. Background

ALS and CME operate competing services shuttling passengers between Denver International Airport and various mountain locations. CME holds three ICC Certificates of Public Convenience and Necessity that authorize the regular route transportation of passengers, both in interstate and intrastate commerce. CME's intrastate authority under each of the certificates is conditioned on the requirement that the carrier provide "regularly scheduled interstate transportation service on the route."

On June 13, 1995, ALS filed a complaint and motion for a preliminary injunction to enjoin CME from transporting passengers between points in Colorado.[2] ALS argued CME lacked bona fide interstate operations

---

1. The Interstate Commerce Commission Termi-nation Act of 1995 abolished the Interstate Com-merce Commission ("ICC") and transferred cer-tain functions and proceedings to the Surface Transportation Board ("Board"). For the pur-poses of this opinion, and for consistency with related rulings, I continue to refer to the agency as the "ICC."

2. In addition to this action, ALS filed a com-plaint with the Colorado Public Utilities Commis-sion seeking to have CME operations declared unlawful. *Aspen Limousine Service, Inc. d/b/a*

and had abandoned its ICC certificates by failing to operate scheduled services from certain locations. ALS requested me to enjoin the unlawful use of the certificates, enjoin all operations under the certificates, and revoke CME's Certificates of Public Convenience and Necessity.

I denied the preliminary injunction for two reasons, each stemming from ALS' inability to demonstrate that CME "clearly violated" the statute. First, I lacked jurisdiction: pursuant to 49 U.S.C. § 11708(a) jurisdiction obtains only upon showing a "clear violation" of 49 U.S.C. § 10922. Second, by failing to establish an "openly and obviously unlawful" violation, ALS did not meet the settled criteria for a preliminary injunction. The moving party must, among other requirements, show it has a substantial likelihood of succeeding on the merits. I concluded CME's involvement in the intrastate portion of an interstate trip, pursuant to through ticketing or common arrangements between CME and at least one airline, might be sufficient to satisfy the terms of CME's ICC certificates. *Aspen Limousine Serv., Inc. d/b/a Vans to Vail v. Colorado Mountain Express,* 891 F.Supp. 1450, 1458 (1995).

## II. *Statutory Framework*

The Interstate Commerce Act contains the following "self-help" provision, under which ALS brings this action:

(a) If a person provides transportation by motor vehicle ... in [a] clear violation of section [10922] of this title, a person injured by the transportation ... may bring a civil action to enforce any such section.

49 U.S.C. § 11708(a).

Because the "clear violation" criterion is a burden of jurisdiction rather than of proof, it is a threshold requirement. *Aaacon Auto Transp., Inc. v. Medlin,* 575 F.2d 1102, 1104 (5th Cir.1978), *reh'g denied,* 580 F.2d 1052 (5th Cir.1978); *see also* 1965 U.S.C.C.A.N., Vol. 2 at 2931; *Quality Exch., Inc. v. Universal Air Freight, Inc.,* 574 F.Supp. 622, 624 (W.D.N.C.1983).

The ICC has power under 49 U.S.C. § 10922(c)(2)(B) to license motor passenger carriers to conduct regular-route operations, in intrastate commerce, over the same routes used in interstate commerce. 49 U.S.C. § 10922(d)(2)(A)–(I). This pre-emptive power to grant intrastate authority is conditioned upon a use limitation requiring the carrier to conduct regularly scheduled, interstate transportation service on the same route used for the intrastate transportation. 49 U.S.C. § 10922(c)(2)(J). The ICC, as a result, cannot authorize intrastate services that function independently of interstate operations: such services must be authorized by the state public utilities commission.

In clarifying the boundaries of its intrastate authority, the ICC detailed the six components of an intrastate route that fall under ICC jurisdiction:

[I]t is not enough for the carrier merely to offer interstate transportation on the route over which it conducts intrastate service. The interstate service must be active. Moreover, the intrastate service may not operate independently of the interstate service, but instead must be conducted as part of the existing interstate services.... [Further], the required interstate transportation must be an actual regularly

---

Vans to Vail, Inc. v. Colorado Mountain Express, Inc., *Docket No. 95F–265CP.*

Two other lawsuits involving these parties are currently pending in this court. In *Colorado Mountain Express v. Ethridge, et al.,* No. 95–K–1730 (filed July 11, 1995), CME maintains certain Pitkin County Airport Commissioners and airport officials conspired to restrict CME's access to the Pitkin County Airport. In *Aspen Limousine Serv., Inc. v. Colorado Mountain Express,* No. 95–D–1185, ALS and CME assert various antitrust and business tort claims against each other.

ALS filed for bankruptcy protection in May 1995. In *In re Aspen Limousine Serv., Inc., d/b/a*

*Vans to Vail, Inc. and Vans to Breckenridge, Inc.,* No. 95–K–2798, I recently affirmed a final order of the bankruptcy court confirming the joint Chapter 11 reorganization plan submitted by ALS and Airport Shuttle Colorado ("ASC").

CME has also appealed from at least three other bankruptcy court orders issued between December 15 and December 20, 1995. The orders prohibited CME from participating in Public Utilities Commission proceedings in which ALS and ASC sought to consummate the stock transfer to ASC and held CME in contempt of court. CME's appeals have been assigned Civil Action Numbers 95–K–3235, 95–K–3236, and 96–K–119.

scheduled service, it must be bona fide and involve service in more than one State, and it must be substantial. However, the interstate and intrastate services need not be identical or provided in the same vehicle. *Funbus Systems, Inc.*, MC–C–10917, MC–153325 (Sub–No. 2), MC–C–10943 (Aug. 11, 1988) (footnote omitted). Thus, if an ICC–authorized intrastate route fails to meet the six elements, the ICC lacks the power to authorize the route and the carrier illegally operates outside its ICC certificates.

### III. *Applicable Standard for Motions*

Absent a genuine issue regarding any material fact, summary judgment is appropriate. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986), *cert. denied*, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988). Summary judgment is not appropriate when different inferences may be properly drawn. Fed.R.Civ.P. 56(c); *Security Nat'l Bank v. Belleville Livestock Comm'n Co.*, 619 F.2d 840, 847 (10th Cir.1980). I must ask whether the evidence shows a "sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

The governing substantive law determines whether a factual dispute is material. Fed. R.Civ.P. 56(c); *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. at 2510. A material fact is genuine when a reasonable jury could return a verdict for the nonmoving party. Fed. R.Civ.P. 56(c); *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510. In a light that favors the nonmoving party, the court must make reasonable inferences from the factual record. *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 528 (10th Cir.1994).

To succeed on a motion for summary judgment, the moving party must show beyond a reasonable doubt that it is entitled to summary judgment. *Baker v. Board of Regents*, 991 F.2d 628, 630 (10th Cir.1993). A scintilla of evidence supporting the motion is insufficient—if the evidence is merely colorable or is not significantly probative, the motion may be denied. *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

The nonmoving party nevertheless may avoid summary judgment by showing specific facts, as to those elements for which the nonmoving party carries the burden of proof, that demonstrate a genuine issue for trial. *Kendall v. Watkins*, 998 F.2d 848, 850 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1075, 127 L.Ed.2d 392 (1994). Such specific facts must go beyond the mere allegations and denials of the pleading. *Liberty Lobby*, 477 U.S. at 247, 106 S.Ct. at 2509.

These standards do not vary when ruling on cross-motions for summary judgment. *Suburban Trust and Sav. Bank v. University of Del.*, 910 F.Supp. 1009, 1013 (D.Del. 1995). Each must be considered independently. *Id.*

### IV. *Merits*

Both ALS and CME seek summary judgment. When parties pursue cross-motions, as here, each side contends no issues of material fact exist. *International Bhd. of Elec. Workers, Local 1522 v. AT & T Microelec., Inc.*, 909 F.Supp. 294 (E.D.Pa.1995). ALS and CME agree the facts may not be disputed. (Pl.'s Br.Resp.Mot.Summ.J. & Supp.Cross–Mot. Summ.J. at 10; Def.'s Br. Supp.Mot.Summ.J. at 1.)

ALS raises first an issue of law, arguing, rather than making an initial determination regarding whether CME operates in "clear violation" of the statute, I must determine initially if CME operates interstate. (Pl.'s Resp. & Cross–Mot.Summ.J. at 2.) ALS further avers the plain language of 49 U.S.C. § 10922(d)(2)(J) requires that CME, under ICC–granted authority to conduct intrastate operations, actually provide scheduled transportation of passengers over a route that runs between two states (i.e. that the route either begin or end in another state such as Kansas or Utah). (*Id.* at 5.)

I previously denied ALS' motion for a preliminary injunction. I determined ALS did not establish CME's "clear violation" of 49 U.S.C. § 10922 and ALS failed to demonstrate its entitlement to injunctive relief pursuant to Federal Rules of Civil Procedure,

Rule 65. *Aspen Limousine Serv., Inc.*, 891 F.Supp. at 1458.

While the authorities cited by ALS create some question as to whether CME has acted in violation of its ICC certificates, such violation, if it exists, is by no means a "clear" violation.... This not only precludes my jurisdiction to grant an injunction under 49 U.S.C. § 11708, but precludes as well a finding that ALS has a substantial likelihood of succeeding on the merits.

*Id.*

The argument ALS now makes, that CME clearly fails to operate interstate, rests on the same factual allegations made to support its ill-fated motion for preliminary injunction. The only apparent difference is that ALS proposes a new analysis of interstate movement, purportedly made necessary by the enactment of 49 U.S.C. § 10922(c)(2)(J).

ALS presently contends I should use first the § 10922(c)(2)(J) language ("regularly scheduled interstate transportation service on the route") to determine if CME operates interstate. Only after I apply the statutory language, ALS states, should I inquire into whether the transportation is substantial and bona fide. Solely during this second step should I examine the nature of the services, taking into account through-ticketing and common arrangements. (Pl.'s Resp. & Cross–Mot.Summ.J. at 7–8.) The proposed construct artificially severs the analysis into two steps and provides an additional point at which the services could fail to meet the interstate requirement.

In essence, ALS maintains I must rule first upon whether CME actually operates between two states, before I determine if through-ticketing or common arrangements transforms intrastate operations to interstate operations. ALS attempts to separate the presently accepted one-step analytical process into two steps: quantitative, where the court makes an initial black-and-white determination of whether the services are interstate, and qualitative, where the court applies the concepts of through-ticketing and common arrangements, thus coloring the initial determination with shades of grey.

■ ALS' proposed analysis fails to address the essence of the denial of its motion for preliminary injunction. Under 49 U.S.C. § 11708, the court has jurisdiction only in instances of a "clear violation of section [10922]." This threshold criterion is not a standard of proof but rather one of jurisdiction. *Aaacon Auto Transp., Inc. v. Medlin,* 575 F.2d 1102, 1104 (5th Cir.1978), *cert. denied,* 580 F.2d 1052 (5th Cir., 1978); *see also* 1965 U.S.C.C.A.N. Vol. 2 at 2931; *Quality Exchange, Inc. v. Universal Air Freight, Inc.,* 574 F.Supp. 622, 624 (D.C.N.C.1983). As a preliminary matter of jurisdiction, I must make a finding that CME "clearly violated" the statute before I can reach the merits of the case. A "clear" violation is "openly and obviously unlawful." *Baggett Transp. Co. v. Hughes Transp., Inc.,* 393 F.2d 710, 714 (8th Cir.1968), *cert. denied,* 393 U.S. 936, 89 S.Ct. 297, 21 L.Ed.2d 272 (1968).

■ ALS must show first a "clear violation," not only to establish jurisdiction but also to satisfy the statutory elements of a private enforcement action. *Aaacon Auto,* 575 F.2d at 1104. Because ALS brings forth no additional facts to bolster its previous attempt to show a "clear violation," its motion for summary judgment, like that for preliminary injunction, must fail. I still lack jurisdiction to grant the motion.

ALS' second basis for the summary judgment motion, that CME must physically move passengers over a state line to provide interstate services, also rests on the notion that I must first apply § 10922(c)(2)(J). Though ALS presents a stronger case for this second position, it too must fail.

■ In employing its new approach, ALS takes a narrow view of "interstate" and maintains the CME vans, to conduct interstate operations, must themselves cross state lines while transporting passengers. ALS concentrates not on the journey itself but on the means used to accomplish the journey. This position contradicts well-established precedent that predicates the interstate requirement on the entire movement of the passengers, rather than on the individual movement of each particular vehicle the passengers use in separate legs of a continuous journey.

Both the ICC and the courts have consistently held that services such as those of CME may constitute interstate movement.

> We note that transportation entirely within a single state, including from and to an airport, can be interstate commerce if certain conditions are met. If a carrier in a single-state movement is engaged in through ticketing arrangements or other common arrangements with a connecting out-of-state carrier, passengers moving in the single-state operation under those arrangements to or from an out-of-state point are in interstate commerce.

*Minnesota Dep't of Transp.—Petition for Declaratory Order—Operations of Rochester Limousine, Inc.,* MC–C–30225 (March 24, 1995) n. 4 (1995 WL 123850 (I.C.C.)) (citations omitted).[3]

ALS contends, because I must first apply § 10922(c)(2)(J), which does not contain language regarding through-ticketing or common arrangements, these two factors do not apply in analyzing whether CME operates interstate. (Pl.'s Resp. & Cross–Mot. Summ.J. at 7.) ALS correctly points out that CME, in attempting to refute this position, relies on cases decided before the statutory changes. However, ALS does not persuasively support its proposal for this new analysis that would alter the manner in which courts determine whether movement qualifies as "interstate." Nor does ALS address ICC decisions as recent as last year, acknowledging the ICC may have authority over transportation entirely within a single state under certain conditions. *See, e.g.*

*Minnesota Dep't of Transp.,* MC–C–30225 (March 24, 1995) (1995 WL 123850 (I.C.C.)).

An analysis of "interstate" using ALS' approach would limit ICC authority to oversee the interstate movement of passengers. ALS refers to the legislative history of the statute:

> The power conferred upon the Commission is limited, that is, the Commission may not grant intrastate operating authority where there is no interstate nexus. Consequently, it can only be used to allow intrastate operations on an interstate route on which the carriers have or will have authority to provide intrastate service. Moreover, the interstate service must be a substantial bona fide interstate service and it must involve actual service in more than one state.

H.R.Rep. No. 100–27, 100th Cong., 1st Sess. 241–42, *reprinted in* 1987 U.S.C.C.A.N. 66, 225–26 (emphasis added). ALS contends CME's operating authority has no interstate nexus and, therefore, the Commission lacks power to grant CME an intrastate license. If a carrier provides only intrastate service on a route, it must do so under authority granted by the state in which the route is located. Had Congress meant to negate fifty years of precedent by enacting 49 U.S.C. § 10922(d)(2)(J), however, it would have made an explicit statement to that effect. Congress made no such assertion in the legislative history of § 10922(c)(2)(J).

ALS also relies on two cases which discuss inter/intrastate services. It contends, in *Airporter of Colorado, Inc. v. ICC,* 866 F.2d 1238, 1240 (10th Cir.1989), the court agreed

3. *See also United States v. Capital Transit Co.,* 338 U.S. 286, 70 S.Ct. 115, 94 L.Ed. 93, *reh'g denied,* 338 U.S. 901, 70 S.Ct. 247, 94 L.Ed. 554 and *reh'g. denied sub nom. Washington, Va. & Md. Land Coach Co., Inc. v. Capital Transit Co.,* 338 U.S. 901, 70 S.Ct. 247, 94 L.Ed. 554 (1949) (holding that passenger transport operations conducted wholly within the District of Columbia constitute interstate movement); *United States v. Yellow Cab Co.,* 332 U.S. 218, 228, 67 S.Ct. 1560, 1565, 91 L.Ed. 2010 (1947) ("When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of this trip any less interstate in character"); *Exec-*

*utive Town and Country Serv. v. City of Atlanta,* 789 F.2d 1523, 1525 (11th Cir.1986) ("The fact that Town and Country's limousines may operate wholly within the state of Georgia does not, in and of itself, take Town and Country out of the stream of interstate commerce"); *Charter Limousine, Inc. v. Dade County Bd. of County Comm'rs,* 678 F.2d 586, 589 (5th Cir.1982) ("It is the conclusion of this Court that Charter's prearrangements place their operations within the stream of interstate commerce, even though they take place wholly within a single state"); *Southerland v. St. Croix Taxicab Ass'n,* 315 F.2d 364, 368–69 (3rd Cir.1963) (holding that airport taxi service operating only on St. Croix was engaged in interstate commerce).

with the ICC's interpretation that the statute requires interstate service by a carrier, i.e. that there must be actual service in more than one state, in order to operate intrastate. (Pl.'s Reply Br.Supp. Cross—Mot. Summ.J. at 4.) ALS also cites *Funbus Systems, Inc. v. State of California Public Utilities Commission*, 801 F.2d 1120 (9th Cir.1986), which, it maintains, held Congress intended that a carrier actually provide interstate service in order to provide intrastate service. (Pl.'s Reply Br.Supp.Cross–Mot.Summ.J. at 5.)

These cases do not support ALS' position that I must first apply § 10922(c)(2)(J). *Airporter of Colorado, Inc.* examined the proportion of interstate to intrastate passengers to determine if the interstate services were "substantial" pursuant to ICC standards. *Funbus* contemplated the ICC's authority to issue intrastate licenses in the context of an inter/intrastate nexus. Neither mentions first applying § 10922(c)(2)(J) to determine if the operations are interstate.

Thus, both contentions upon which ALS bases its motion for summary judgment fail. First, ALS has not shown that passage of 49 U.S.C. § 10922(c)(2)(J) changed the type of analysis used in determining whether a carrier operates interstate. Employing the standard analysis used to deny ALS' motion for preliminary injunction, I lack jurisdiction under 49 U.S.C. § 11708(a). Second, ALS has not demonstrated that the plain language of § 10922(c)(2)(J) requires CME physically to cross state lines to conduct interstate services.

Resolution of CME's summary judgment motion requires a far less elaborate examination. As stated above, CME seeks dismissal on the ground that ALS cannot show a "clear violation." No genuine issue of material act exists: the crux of the cross-motions, rather, consists of issues of law raised by ALS. However, ALS neither established its contentions regarding issues of law nor introduced specific facts that demonstrated a genuine issue for trial. CME must prevail as a matter of law and should receive summary judgment.

 Finally, CME requests attorney fees and costs, pursuant to 49 U.S.C. § 11708(c), which states:

In a civil action under subsection (a) of this section, the court may determine the amount of and award a reasonable attorney's fee to the prevailing party. That fee is in addition to costs allowable under the Federal Rules of Civil Procedure.

49 U.S.C. § 11708(c). Congress clearly intended that the attorney fees provision, like the "clear violation" burden, discourage harassing lawsuits by supplementing the existent equitable, nonstatutory power of a federal court to award attorney fees against parties who act oppressively or in bad faith. *Aaacon*, 575 F.2d at 1107. Thus, when a plaintiff brings a § 11708 suit that lacks a jurisdictional basis, the successful defendant should receive an award of attorney fees, absent extenuating circumstances. *Id.* Because ALS failed to meet its burden to show a "clear violation" under § 11708(a), CME should receive reasonable attorney fees unless ALS can show "extenuating circumstances." None has been shown.

### V. *Conclusion*

I deny ALS' motion for summary judgment; grant CME's motion for summary judgment; and award CME reasonable attorney fees. Accordingly,

IT IS ORDERED THAT ALS' Motion for Summary Judgment is DENIED;

IT IS FURTHER ORDERED THAT CME's Motion for Summary Judgment is GRANTED;

IT IS FURTHER ORDERED THAT on or before April 8, 1998, CME shall file affidavits and records supporting with specificity and particularity its claim for attorney fees. If, on or before April 22, 1996, ALS files specific exceptions to the claimed fees, the issue will be set for hearing with costs of that hearing and preparation for it to follow the event.